IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JUSTIN E. EDMUND,
a/k/a JUSTIN E. EDMOND,
A-file # A91-448-618,
    Petitioner,

vs.                              Case No. 4:05cv347/MMP/EMT

ALBERTO GONZALES, et al.,
    Respondents.
_____/

## REPORT AND RECOMMENDATION

       This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (Doc. 2). Respondents filed a motion to dismiss the petition (Doc. 20), which the court will consider under the standards governing a summary judgment motion, because Respondents attached, and the court will consider, numerous documents outside the pleadings. *See* Fed. R. Civ. P. 12(b). Petitioner filed a response to the motion to dismiss, including several exhibits (Doc. 27).

       This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and other submissions before the court show that the motion for summary judgment should be granted, and the habeas petition should be denied.

I.      BACKGROUND

Petitioner, an alien citizen of the Bahamas, is currently being detained at Krome North Service Processing Center in Miami, Florida.[1]  In the instant action, Petitioner challenges his continued detention on the ground that he has been detained for a period exceeding ninety (90) days from the date he was ordered removed from the United States, and his removal is not reasonably foreseeable.

Petitioner states he was born on January 26, 1978 in the Bahamas to a Bahamian citizen mother and a Haitian citizen father (Doc. 27 at 2, Ex. A ¶ 1).  Petitioner came to the United States in 1982 when he was four years old, and on September 27, 1990, he received an immigrant visa granting him lawful permanent residency status in the United States (Doc. 27 at 2, Ex. A ¶ 3; Doc. 20 at 2, Ex. A).  In March of 1998, Petitioner was convicted in Dade County, Florida, of possession of cocaine and possession of cannabis and placed on probation (Doc. 20 at 2, Ex. B).  In July of 1998, Petitioner was convicted in Dade County, Florida, of carrying a concealed firearm and sentenced to two (2) days imprisonment with credit for two (2) days of pre-sentence incarceration (Doc. 20 at 2, Ex. C).

In February of 2000, Petitioner was brought to the attention of immigration authorities while he was incarcerated in the Dade County Jail (Doc. 20, Ex. A).  A Notice to Appear for removal proceedings was issued on February 15, 2000, and served upon Petitioner on March 2, 2000 (Doc. 20, Ex. D; Doc. 27, Ex. A ¶ 4).  On March 1, 2002, Petitioner was convicted in Dade County of grand theft auto and sentenced to sixty (60) days of incarceration with credit for twenty-two (22) days of pre-sentence incarceration (Doc. 20, Ex. G).

Petitioner's removal hearing was October 7, 2002, for which Petitioner failed to appear and was ordered removed in absentia to the Bahamas and, alternatively, to Haiti (Doc. 20, Ex. K).  The alternative to Haiti was presumably based upon his father's citizenship (Doc. 20 at 3).  On February 4, 2005, Petitioner was produced by bond agents to immigration officials (Doc. 20, Ex. L).  Petitioner filed an emergency motion to re-open his removal proceedings, but the immigration court denied the motion on March 14, 2005 (Doc. 20, Exs. M, N).

---

[1]At the time of filing his federal habeas petition, Petitioner was being detained at a facility in Wakulla County, Florida, which is located in the Northern District (*see* Doc. 2 at 3).

Case No.:  4:05cv347/MMP/EMT

On March 29, 2005, Petitioner was served with a Warning for Failure to Depart and provided an instruction sheet of "a list of things you are required to complete within 30 days of receiving this form, in order [to] comply with your obligation to assist in obtaining a travel document." (Doc. 20, Ex. N).  Included in the list were the following:

> Submit passports (current and expired) to the INS.  If you have a copy of your passport, you are to submit it.
>
> Apply for a travel document/passport from your embassy or consulate, or directly from your government in your native country, or any other embassy or consulate of your native country in another country.
>
> Comply with all instructions from all embassies or consulates requiring completion of documentation for issuance of a travel document.
>
> Submit to the INS birth certificates, national identification cards, and any other document issued by a foreign government indicating your citizenship, nationality, place of birth, and place of residence prior to entering the United States.
>
> Provide names and addresses of family and friends residing in the United States and request that they contact your embassy or consulate in the United States in order to facilitate the issuance of a travel document.
>
> Provide names and addresses of family and friends residing in your country of citizenship and request family and friends residing abroad contact your government in reference to issuing a travel document.
>
> You are required to take measures to request reinstatement of your previous nationality, register as required, or take any other action that will ensure the issuance of a travel document and your removal from the United States.
>
> Provide INS with written copies of requests to embassies or consulates requesting issuance of a travel document.
>
> Provide INS with written copies of responses from embassies or consulates regarding your requests.
>
> Solicit permission from another country, which may be able to accept you, to enter that country to effect your removal from the United States.

(*id.*).  Petitioner was also advised that his failure to comply with these requirements or to provide "sufficient evidence of your inability to comply" could result in continued detention or criminal prosecution (*id.*).  On July 21, 2005, Petitioner received another Warning for Failure to Depart (*id.*).

On September 12, 2005, the Department of Homeland Security (DHS) issued a Decision to Continue Detention, informing Petitioner that he would not be released from custody at that time, as the agency was awaiting receipt of his travel document, and he would be removed "in the reasonably foreseeable future" (Doc. 20, Ex. P).  Petitioner was additionally advised of his obligation to make reasonable efforts to comply with the order of removal and to cooperate with the agency's efforts to remove him by taking whatever actions the agency requested of him (*id.*).  The Decision did not indicate that Petitioner had failed to provide any information (*id.*).

Petitioner filed the instant petition two days later, on September 14, 2005, seeking release on the ground that there is no chance of his removal in the reasonably foreseeable future, that his mandatory, indefinite detention is unconstitutional, and that he is thus entitled to release based on <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) (Doc. 2).  At the time of filing the instant petition, Petitioner states he had made one written request and ten verbal requests to the Consulate of the Bahamas for an update on his travel documents (Doc. 2; Doc. 27, Ex. A ¶ 7).  Since the filing of the instant petition, Petitioner contacted the Consulate of Bahamas on September 28, 2005 (*see* Doc. 20 at 4; Doc. 27, Ex. A ¶ 7).  Additionally, in November of 2005, he spoke with Nicole Gibson, an official at the Bahamian Consulate, and was told that information about his case had been sent from the Consulate in Miami, Florida, to the government in Nassau, Bahamas (Doc. 27, Ex. A ¶ 8; *see* Doc. 36 ¶ 2).  Ms. Gibson advised Petitioner that the decision regarding his travel documents was in the hands of officials in Nassau, and he need not call the Consulate again (*id.*).        On January 12, 2006, Petitioner was served with another Warning for Failure to Depart and provided an instruction sheet of the following things he was required to complete:

> Apply for a travel document/passport from your embassy or consulate, or directly from your government in your native country, or any other embassy or consulate of your native country in another country.
>
> Comply with all instructions from all embassies or consulates requiring completion of documentation for issuance of a travel document.

Case No.: 4:05cv347/MMP/EMT

>Provide names and addresses of family and friends residing in the United States and request that they contact your embassy or consulate in the United States in order to facilitate the issuance of a travel document.
>
>Provide names and addresses of family and friends residing in your country of citizenship and request family and friends residing abroad contact your government in reference to issuing a travel document.
>
>Provide INS with written copies of requests to embassies or consulates requesting issuance of a travel document.
>
>Provide INS with written copies of responses from embassies or consulates regarding your requests.

(Doc. 20, Ex. O).

Petitioner contacted the Bahamian Consulate on May 23, 26, 30, and 31, 2006, and on June 6, 2006 (Doc. 36 ¶ 2). He again spoke with Ms. Gibson, who told him that his case was being handled by officials in Nassau, that nothing had been done in his case, and that she had no idea when anything would be done (Doc. 36 ¶ 3).

Petitioner states that prior to filing the instant petition he did not make any requests to the Consulate of Haiti because he was unaware of the possibility that he could be removed to Haiti as he never received a copy of the order of removal (Doc. 27, Ex. A ¶ ¶ 4, 5). Petitioner states he became aware of this possibility when he received Respondents' motion to dismiss in this case, on February 10, 2006 (*id*.). Upon learning of the possibility, he contacted the Haitian Consulate on February 10, 15, 16, 17, 23, and 24, 2006, and on May 31, 2006 (Doc. 36 ¶ 4). Ms. Andrelle Martin, a Haitian official, told Petitioner that she did not know when he would hear anything from the Haitian government about the issuance of travel documents, and she believed it was unlikely that he would be issued a passport because he was born in the Bahamas, his mother is a Bahamian citizen, and only his father is a Haitian citizen (*id*. ¶ 5).

Petitioner submitted an affidavit of Leon Fresco, an attorney who agreed to assist Petitioner in expediting his deportation but does not represent him in this proceeding (Doc. 36, Affidavit of Leon Fresco). Mr. Fresco states that he spoke with Nicole Gibson at the Bahamian Consulate in Miami on June 6, 2006 (Fresco Aff. ¶ 5). Ms. Gibson confirmed that Petitioner had contacted her at least 5-7 times in the preceding six months begging her to do all that she could to allow him to

be deported to the Bahamas (*id*.). She stated that Petitioner's mother had contacted her numerous times as well (*id*.). Ms. Gibson told Mr. Fresco that Petitioner's file had been transferred to the Ministry of Foreign Affairs in Nassau, that she was embarrassed that nothing had been done in his case, and that she had no idea when anything would be done (Fresco Aff. ¶ 6). Mr. Fresco also contacted Ms. Martin at the Haitian Consulate in Miami on June 6, 2006 (Fresco Aff. ¶ 7). Ms. Martin stated that Petitioner had contacted her at least 3-4 times in the preceding two months (*id*.). She stated that she did not know the status of Petitioner's case, but she believed that the Haitian government would not issue a travel document to Petitioner because he was born in the Bahamas, his mother is a Bahamian citizen, and only his father is a Haitian citizen (*id*.).

At the time of filing the instant petition, DHS had made one request for travel documents to the Consulate of Bahamas, on April 4, 2005, and one request to the Consulate of Haiti, on August 26, 2005 (Doc. 33, Affidavit of Rita Perry ¶ ¶ 10, 14). After the petition was filed, DHS sent a written request for an update on Petitioner's travel documents to the Bahamian Consulate on February 3, 2006 (Perry Aff. ¶ 21). On April 25, 2006, DHS talked to Ms. Gibson at the Bahamian Consulate, and Ms. Gibson informed DHS that she needed more information (Perry Aff. ¶ 29). That same day, DHS faxed Ms. Gibson a copy of Petitioner's mother's passport face page, accompanying child page, and an updated I-217, Information for Travel Document or Passport (Perry Aff. ¶ 30). On April 26, 2006, Ms. Gibson informed DHS that she had sent the information to Nassau for verification (Perry Aff. ¶ 31). On May 17 and 30, 2006, Ms. Gibson informed DHS that she had not received any information from Nassau regarding Petitioner's travel documents (Perry Aff. ¶ ¶ 32, 33). Also on May 30, 2006, Ms. Gibson stated that Petitioner had called her and told her that the documents sent by DHS were not his (Perry Aff. ¶ 33). On June 7, 2006, Ms. Gibson again stated she was awaiting a decision from Nassau (Perry Aff. ¶ 34).

Since the filing of the instant petition, Respondents have also made several attempts to obtain travel documents for Petitioner from the Consulate of Haiti. On January 3, February 1, March 1, and April 17, 2006, DHS requested an update on Petitioner's travel documents from the Haitian Consulate (Perry Aff. ¶ ¶ 17, 19, 22, 25). On April 21, 2006, Petitioner refused to complete the required "Fiche Signaletique du Deporte" (Perry Aff. ¶ 26). On April 25, 2006, DHS received a letter from the Consulate stating that their office was awaiting authorization to issue the travel

document (Perry Aff. ¶ 28).  On June 9, 2006, DHS received notification that Petitioner would be interviewed by the Haitian Consulate later that month (Perry Aff. ¶ 35).

On June 30, 2006, Respondents' counsel notified the court that Petitioner was scheduled for an interview with Haitian officials on July 10, 2006 (Doc. 38).  Counsel further advised that an initial group of 200 prisoners would be deported to Haiti on July 26, 2006, and an additional 50 prisoners would be deported each month thereafter (*id.*).  On July 27, 2006, Petitioner notified the court that he had recently met with officials from the Haitian consulate, and they told him that he would never be issued travel documents to Haiti (Doc. 44 ¶ 3).  Petitioner requested written verification of this, but the officials refused to provide it (*id.*).

II. DISCUSSION

Title 8 U.S.C. § 1231 governs detention and removal of aliens ordered removed.  Section 1231(a)(1)(A) provides that once an alien is ordered removed, the Attorney General shall remove the alien within a period of ninety (90) days.  During the removal period, the Attorney General is to detain the alien.  Section 1231 also provides that, if an alien acts to frustrate the INS's ability to remove him, the removal period is tolled during the period of the alien's actions:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C).  The statute further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).  The terms of supervision in paragraph (3) of that section include appearing before an immigration officer periodically for identification, submitting, if necessary, to a medical and psychiatric examination, providing information that the Attorney General considers appropriate, and obeying reasonable restrictions on conduct or activities as prescribed by t the Attorney General. 8 U.S.C. § 1231(a)(3).

In Zadvydas v. Davis, the Supreme Court found that a six month period was a presumably legitimate period to detain an alien awaiting removal. 533 U.S. at 701. However, the Court stated that in order for detention to remain reasonable, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Court further noted that in order for the detention to remain reasonable, as the period of prior post-removal confinement grows, what is meant by the "reasonably foreseeable future" would necessarily decrease. *Id.* The Court also held that an alien may be confined until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.[2] *Id.* When a court determines that removal is not reasonably foreseeable, the court should conclude that continued detention is unreasonable and order the alien's release, but the release should be conditioned on "any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 699-700 (citation omitted).

Following Zadvydas, the Eleventh Circuit held in Akinwale v. Ashcroft, that in order to be entitled to relief an alien must show not only post-removal order detention longer than six months, but also evidence of a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 287 F.3d 1050, 1052 (11th Cir. 2002).

In the instant case, Petitioner has clearly shown he has been detained longer than six months since the removal order was entered. The question currently before this court-- whether there is "no significant likelihood of removal in the reasonably foreseeable future"--was not readily answerable from the initial submissions, nor was the sub-issue of whether Petitioner was cooperating with the DHS to secure his removal. It did not appear from the record that Petitioner's removal was reasonably foreseeable, even though Petitioner claimed to be cooperating with the attempts of DHS and the Bahamian Consulate to secure travel documents. Furthermore, at that time he had made no efforts to obtain travel documents to Haiti, as he claims he was unaware of the possibility that he could be deported to Haiti after the filing of his habeas petition. This court therefore entered an order requiring the parties to supplement the record with details about their efforts to obtain travel

---

[2]Apparently, neither the Zadvydas court nor any other has addressed the issue of when and under what circumstances a detainee's case may be re-reviewed by the court.

Case No.: 4:05cv347/MMP/EMT

documents to the Bahamas and Haiti (Doc. 31). Having received that information, it is now appropriate to conduct the Zadvydas analysis.

As previously discussed, under Zadvydas, Petitioner must show that there is no significant likelihood of removal in the reasonably foreseeable future. In the motion for summary judgment, Respondents argue that Petitioner has failed to meet this burden due to his failure to apply to the Haitian Consulate for travel documents, as well as the fact that DHS is "awaiting clearance" from the Bahamian or Haitian embassies for the return of Petitioner to either of those countries (Doc. 20 at 8). In their supplemental brief, Respondents contend that their efforts have not been successful "due in large part to the efforts of the Petitioner to prevent his removal," referring to Petitioner's refusal to complete "the required 'Fiche Signaletique du Deporte,'" and the Bahamian official's statement that Petitioner told her that the documents DHS had sent her (a copy of Petitioner's mother's passport face page, accompanying child page, and an updated Information for Travel Document or Passport) were not his (Doc. 33 at 1).

Petitioner counters that he was not aware of efforts to remove him to Haiti until he received Respondents' motion for summary judgment. Since then, he contacted the Haitian Consulate several times and was interviewed by Haitian officials. Petitioner maintains that he has "fully complied with any and all requests by Respondents to attempt to secure travel documents" (Doc. 44 at 3), but he has not directly addressed the two examples of his failure to cooperate described in the previous paragraph.

Although the court does not accept Respondents' contention that their efforts to remove Petitioner have been unsuccessful due to Petitioner's refusal to cooperate, the court agrees with Respondents that Petitioner has failed to show that there is no significant likelihood of removal in the reasonably foreseeable future. Although Petitioner has been detained since February of 2005, and the request for travel documents from the Bahamian government has been pending since April of 2005, DHS was not notified until April 25, 2006, that additional information was required by the Bahamian Consulate. Upon such notification, DHS sent additional information that same day. Less than four months have elapsed, and there is no indication that the Bahamian Consulate deemed the documentation insufficient or that there is any other impediment to removal other than the pace at which Petitioner's case is being processed by the Bahamian government. In sum, Petitioner has

failed to show good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, therefore, his continued detention is reasonable. This conclusion certainly does not prevent Petitioner from filing another habeas petition upon a change of circumstances.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. That Respondents' motion for summary judgment (Doc. 20) be **GRANTED**.
2. That the petition for writ of habeas corpus (Doc. 2) be **DENIED without prejudice**.
3. That all pending motions be **DENIED** as moot.

At Pensacola, Florida this 14th day of August 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

Case No.: 4:05cv347/MMP/EMT